Anthony JACKSON, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 27A05–9309–CR–345.

Court of Appeals of Indiana,
Fifth District.

May 23, 1994.

James A. McKown, Jr., Marion, for appellant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

BARTEAU, Judge.

Anthony Jackson appeals his conviction of criminal gang activity, a Class D felony, raising the following issues:

1. Whether the evidence was sufficient to support a conviction of criminal gang activity; and

2. Whether the Criminal Gang Activity Statute is unconstitutional because:

    a. It is void for vagueness under the U.S. Constitution and the Indiana Constitution;

    b. It is overbroad and infringes upon the right of association under the U.S. Constitution and the Indiana Constitution; and

    c. It violates the Equal Protection Clause of the U.S. Constitution and the Indiana Constitution.

We affirm.

### FACTS

On August 24, 1992, the Big R store in Marion, Indiana was burglarized and several guns were taken by members of a group who called themselves the "G's." Jackson was charged with conspiracy to commit burglary and criminal gang activity as a result. A jury acquitted Jackson of the conspiracy charge and convicted him of criminal gang activity. Viewed most favorably to the State, the evidence is that Jackson was a member of a group called the "G's." Anyone wanting to be a member of the "G's" had to be willing to fight. Members were initiated or "blessed" into the group by being burned on the right side of the chest or by being "jumped." Being "jumped" meant having other "G's" beat up the new member. When a member broke a rule of the group, the member was "violated." Being "violated" meant to stand in a corner and take punches by six other "G's." There were at least nine members of the group in Marion, Indiana.

Additional facts will be included where necessary.

### *SUFFICIENCY*

■ Jackson first argues that the evidence is not sufficient to support a conviction of criminal gang activity because there is no evidence that members of the "G's" were required as a condition of membership or continued membership to commit a felony or battery. Criminal gang activity is defined as follows: "A person who knowingly or intentionally actively participates in a criminal gang commits criminal gang activity, a Class D felony." Ind.Code 35–45–9–3. Indiana Code 35–45–9–1 defines "criminal gang" as:

a group with at least five (5) members that specifically

(1) either:

(A) promotes, sponsors or assists in; or

(B) participates in; and

(2) requires as a condition of membership or continued membership;

the commission of a felony or an act that would be a felony if committed by an adult or the offense of battery. . . .

To be convicted of criminal gang activity, the evidence must show that the defendant

(a) actively participat[es, or is an active member,] in a group with five or more members which promotes, sponsors, assists in, or participates in the commission of a felony or an act that would be a felony if committed by an adult or a battery, and requires as a condition of membership the same criminal conduct, (b) with knowledge of the gang's illegal advocacy of felonies or batteries, and (c) with specific intent to further, facilitate, or accomplish the substantive criminal conduct. . . .

*Helton v. State* (1993), Ind.App., 624 N.E.2d 499, 510. Thus, here, the evidence must show that: (a) Jackson actively participated in the "G's;" (b) the "G's" had five or more members, the "G's" participated in the commission of a felony or a battery, and the "G's" required as a condition of membership the same criminal conduct; (c) Jackson had knowledge of the "G's" illegal advocacy of felonies or batteries; and (d) Jackson was an active participant in the "G's" with the specific intent to further, facilitate, or accomplish the substantive criminal conduct of the "G's."

The evidence shows that members of the "G's" were initiated into the group by either being burned or "jumped" by other "G" members. Members were also subject to being beaten as a form of punishment. Jackson argues that the only evidence of the commission of a battery was in the form of members of the group hitting other members of the group and that the members had consented to being beaten. Because consent is generally a defense to battery, Jackson argues, no battery occurred. The criminal gang statute, however, has been interpreted to cover intra-group fighting and specifically the beatings given to other members as part of initiations or punishment. *Id.* Thus, Jackson's argument that the intra-group beatings are not batteries is meritless.

Jackson is correct that there is nothing in the record to indicate that a member was required to administer the burnings or beatings as a condition of becoming a member or continuing as a member of the "G's." However, evidence does indicate that a person had to be a "fighter" in order to be a member of the "G's." From this evidence, the jury could infer that the commission of the offense of battery was a condition of continued membership in the "G's." Further, the evidence shows that the "G's" committed the burglary of the Big R store. Burglary is a felony. I.C. 35–43–2–1. Thus, the evidence supports a finding that the group calling themselves the "G's" was a criminal gang.

■ At oral argument, held on April 20, 1994, the issue arose whether the evidence supports a finding that Jackson "actively participated" in the criminal gang where there is no evidence that Jackson committed a battery or was involved in a burglary. This issue did not arise in *Helton* because the evidence there clearly showed that Helton administered the initiation beatings. As stated above, the State must prove that Jackson was an active member in the "G's" with knowledge of the criminal conduct and with the intent to further or facilitate the criminal conduct. *Helton,* 624 N.E.2d 499. We do

not believe it is necessary for the State to prove that Jackson himself administered a beating or committed a felony to prove that Jackson actively participated in the group. "We can perceive no reason why one who actively and knowingly works in the ranks of that organization, intending to contribute to the success of those specifically illegal activities, should be any more immune from prosecution than he to whom the organization has assigned the task of carrying out the substantive criminal act." *Scales v. United States* (1961), 367 U.S. 203, 226–227, 81 S.Ct. 1469, 1485, 6 L.Ed.2d 782 (construing the membership clause of the Smith Act, which makes a felony the acquisition or holding of membership in an organization which advocates the overthrow of the U.S. Government). Clearly the legislature thought the same because I.C. 35–45–9–3 proscribes active participation *in the criminal gang*, not active participation specifically in the felonies or batteries.

"Active participation" is something more than mere membership in a group. *Helton*, 624 N.E.2d at 510, n. 15 (citing *Scales*, 367 U.S. at 227, 81 S.Ct. at 1485). Here, the evidence is that Jackson was a member of the "G's" and in the summer of 1990 was the leader of the group. There is also evidence that Jackson was the "Chief Violator" of the group. In addition, on the day of the Big R burglary, Jackson went with several other "G's" to Muncie to "gain knowledge" about the "G's" from more experienced members of the Muncie "G's." This is evidence of more than mere membership in the group and is sufficient to support a finding that Jackson actively participated in the "G's." The evidence supports Jackson's conviction of criminal gang activity.

### CONSTITUTIONALITY OF GANG STATUTE

■ In considering whether a statute is constitutional, we begin with the presumption that the statute is constitutional and place the burden on the party challenging it to show that it is unconstitutional. *Helton*, 624 N.E.2d at 505. "To be constitutional, a statute must be carefully drafted or be authoritatively construed to punish only constitutional-ly unprotected conduct.... The language of a judicial opinion is as good as the language of the statute construed in the opinion." *Id.*

### A. Vagueness

■ Jackson argues that the Gang Statute is unconstitutionally vague under the U.S. Constitution and the Indiana Constitution. Because state and federal vagueness analysis is the same, we will address Jackson's contentions under each constitution together. *Id.*

■ A statute must clearly define its prohibitions so that individuals of ordinary intelligence would comprehend the statute to fairly inform them of the generally proscribed behavior and so that the statute does not encourage arbitrary or discriminatory enforcement. *Kolender v. Lawson* (1983), 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903; *Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222; *Helton*, 624 N.E.2d at 505–506. Without citation to any authority, Jackson merely states that the Gang Statute is unconstitutionally vague because the terms "promotes, sponsors, assists, and participates" are not defined. He does not support this contention with any argument and thus waives it. Ind. Appellate Rule 8.3(A)(7). Jackson also contends, again without citation to any authority, that the statute is unconstitutionally void because it is not clear whether the prohibited act is participating in the gang, or participating in the felony or battery. Jackson waives this contention also for failure to cite to authority or to support the contention with an argument. We note, however, that, as discussed above, the Gang Statute clearly prohibits a person from participating in a group, when the group requires its members to participate in felonies or batteries.

Additionally, Jackson argues that the Gang Statute encourages arbitrary and discriminatory enforcement because it could apply to activities such as football teams who are schooled in the hitting aspects of the game, or the circumcision requirements of certain religious faiths, or the hand-to-hand combat training that Indiana law enforcement agencies go through at the police academy.

The statute provides no guidelines to exclude these 'criminal gangs,' but does provide unfettered discretion to arbitrarily discriminate against other 'criminal gangs,' which the State deems less worthy of existence.

Appellant's Brief, p. 24. Jackson here appears to combine his vagueness argument with his overbreadth argument. Nevertheless, we will address each separately. The court in *Helton* addressed whether the Gang Statute was void for vagueness because it allowed arbitrary or discriminatory enforcement. Noting that the enforcement of laws always requires some degree of judgment on the part of police and prosecutors, the court concluded that the Gang Statute was not void because "undesirable groups, the wrong type of crowd, or annoying conduct alone is not punishable under the Gang Statute." 624 N.E.2d at 507. To be punished under the Gang Statute, a person must actively participate in a group with the knowledge that the group "promotes, sponsors, assists in, or participates [in], and requires as a condition of membership the commission of a felony or battery...." *Id.*

We agree with the analysis in *Helton* and also conclude that the Gang Statute gives persons of ordinary intelligence fair warning of the prohibited conduct and does not encourage arbitrary or discriminatory enforcement. Thus, the Gang Statute is not unconstitutionally vague.

### B. Overbreadth

Jackson, again without citation to authority, argues that the Gang Statute is unconstitutionally overbroad because it interferes with his protected right to free association and because it interferes with permissible conduct such as football, circumcisions and hand-to-hand combat training. We first note that an overbreadth analysis under the the U.S. Constitution is not applicable to the Indiana Constitution. *Price v. State* (1993), Ind., 622 N.E.2d 954, 958. "Once an Indiana constitutional challenge is properly raised, the court should first determine whether the statute is capable of constitutional application and then determine whether its application in the case was constitutional, refraining from speculation about hypothetical applications." *Helton,* 624 N.E.2d at 507 (citing *Price,* 622 N.E.2d at 958).

Indiana's Gang Statute is capable of constitutional application, *Helton,* 624 N.E.2d 499; thus, we must determine whether its application in this case was constitutional. Jackson argues that application of the Gang Statute violates his constitutionally protected right to free association. This argument was rejected in *Helton* because neither the U.S. nor the Indiana Constitution protects associations made in furtherance of crimes or criminal conspiracies. *Id.* at 508. That is the type of association for which Jackson was punished. Application of the Gang Statute to Jackson's conduct was constitutional under Indiana law.

Under the federal overbreadth analysis, we must determine whether the statute substantially prohibits activities protected by the First Amendment. *Price,* 622 N.E.2d at 966; *Helton,* 624 N.E.2d at 508. The authoritative constructions by state courts control overbreadth analysis. *Osborne v. Ohio* (1990), 495 U.S. 103, 113–14, 110 S.Ct. 1691, 1698–99, 109 L.Ed.2d 98; *Price,* 622 N.E.2d at 967; *Helton,* 624 N.E.2d at 508. The court in *Helton* determined that the Gang Statute does not prohibit the mere association of five or more persons, nor does it criminalize the mere status of gang membership. *Id.* A person charged under the Gang Statute must actively participate in a group which promotes, sponsors, assists in or participates in, and requires it members to commit felonies or batteries, with knowledge of the group's criminal advocacy. *Id.* Further, the Gang Statute requires that the active member must have the specific intent or purpose to further the group's criminal conduct before he may be prosecuted. *Id.* Thus, the statute only applies to criminal associations that are not protected by the First Amendment. The other activities Jackson points to do not fall within the Gang Statute because those are activities for which the defense of consent is available to a charge of battery. *Id.* at 514, nn. 22–23.

The Indiana Gang Statute, as construed by the court in *Helton,* which construction we apply here, is not unconstitutionally over-

broad because it does not substantially prohibit activities protected by the First Amendment.

### C. Equal Protection

Jackson does not present any argument on the issue whether the Gang Statute deprived him of equal protection under the laws and has thus waived that issue. App.R. 8.3(A)(7). We note, however, that the court in *Helton* determined that the Gang Statute does not violate the equal protection under the laws guaranteed by the U.S. Constitution and the Indiana Constitution. *Id.* at 512.

### CONCLUSION

The Indiana Gang Statute is not unconstitutional. The State presented sufficient evidence from which the jury could find that Jackson actively participated in a criminal gang with knowledge of the gang's criminal activity and with the intent to further the gang's criminal conduct. Thus, Jackson's conviction is AFFIRMED.

SHARPNACK, C.J., and RUCKER, J., concur.